STATE v. H. H. BURNETT, Appellant.—No. 40203—206 S. W. (2d) 345.

Division Two, December 8, 1947.

*J. M. Haw* and *Claude F. Cooper* for appellant.

108

*J. E. Taylor*, Attorney General, and *Arvid Owsley*, Assistant Attorney General, for respondent.

110

[346] TIPTON, J.—This is the second appeal in this case. An information was filed in the circuit court of New Madrid County, Missouri, charging appellant with murder in the first degree for having killed Hughey Kitchen on April 17, 1943. On change of venue the case was sent to the circuit court of Mississippi County and at the first trial the appellant was found guilty of murder in the second degree. That sentence was reversed and remanded by this court for the failure to give certain instructions. The case is reported in 354 Mo. 45, 188 S. W. 2d 51. At the second trial the appellant was found guilty of manslaughter and his punishment was fixed at seven years' imprisonment in the state penitentiary. From that sentence he has duly appealed to this court.

The appellant contends that the evidence is insufficient to support the verdict finding him guilty of manslaughter. The evidence at the second trial was substantially the same as that produced at the first trial. We will therefore very briefly outline the evidence most favorable to the state.

The deceased was killed in appellant's restaurant in the town of Parma, Missouri, late in the afternoon of Saturday, April 17, 1943. On the day of the killing the deceased, who was the town marshal, was leaving the pool hall next door to appellant's place of business. Gene Burnett and his mother, Susie Burnett, son and wife of appellant, were sitting in the back room of the restaurant and the windows were open. Some remark was made by Gene Burnett loud enough for deceased to hear. The deceased asked Gene if he were talking to him. Gene said he was not, that he was talking to his mother. Gene said something else to his mother, whereupon the deceased turned and said, ":You are talking to me, too." Gene said, "No, I am not. I am talking to my mother." Deceased entered the room and undertook to arrest Gene. Gene told him that he had done nothing and would not go with him. Deceased then went to the city hall and returned to the restaurant with a man he had deputized to help make the

arrest and proceeded to arrest Gene. He did not have a warrant for his arrest. Deceased went to the kitchen of the restaurant, and after some argument Gene said he would go along with deceased. He was in the act of getting his coat when a scuffle ensued, [347] resulting in two shots being fired at the deceased by appellant H. H. Burnett. The effect of the second shot was immediate death to deceased. There is conflicting testimony as to actions and threats of the deceased toward defendant and his family.

There is not the slightest evidence that Gene had committed a crime, nor had a warrant been issued for his arrest. On the first appeal we held that the arrest was illegal, and an illegal arrest or attempted illegal arrest is adequate provocation to reduce a homicide to manslaughter unless the homicide was, in fact, committed with express malice. We also held that an illegal arrest or detention may be sufficient provocation, not only to the person arrested or detained but also to his relatives. We held the evidence sufficient to sustain a verdict of murder in the second degree. There can be no doubt that the evidence in this record is sufficient to sustain a conviction for manslaughter.

The appellant contends that his ''plea to the jurisdiction, in abatement and for release'' should have been sustained. The first part of this plea is to the effect that appellant, his wife and his son Gene were compelled to testify at the coroner's inquest contrary to section 18 of article I, and also section 19 of article I, of our 1945 constitution and the statutes of this state; and also that appellant was not accorded a preliminary hearing before the information was filed in the circuit court of New Madrid County. Therefore, the trial court was without jurisdiction to try him.

To support this plea, the appellant was placed upon the stand. He testified that while he was under arrest he was taken before the coroner's jury and was told by the sheriff that he would have to testify. He was not allowed to be present when the other witnesses were testifying but was kept in an automobile. In fact, all of the witnesses were excluded from the room during the inquest except when the particular witness was testifying. The appellant testified that before he waived his preliminary hearing he told the sheriff that he wanted to consult an attorney, but the sheriff advised him that it was not necessary as he would not waive any of his rights by waiving a preliminary hearing. Apparently before this witness had concluded his testimony the prosecuting attorney stated that the state took the position that these matters were presented to the circuit court of New Madrid County and the ruling of that court was adverse to appellant, and for that reason the matter was *res adjudicata*. The trial court then overruled the plea. The proceedings be-

fore the New Madrid court are not incorporated in this bill of exceptions.

A coroner's inquest is not a part of a criminal prosecution, whether the prosecution be by indictment or information. Therefore, the validity of the information is in no way affected by the fact that the appellant and his wife testified at the coroner's inquest. State v. Bartley, 337 Mo. 229, 84 S. W. 2d 637.

As before stated, there was filed in the circuit court of New Madrid County a plea in abatement to the information filed in that court based on the fact that appellant was not accorded a preliminary hearing, which was overruled by that court. The burden of proof that he was not accorded a preliminary hearing is upon the appellant, and since this record fails to show his proof before the New Madrid County circuit court, we cannot say that that court erred in overruling his plea. State v. Shields, 296 Mo. 389, 246 S. W. 932. The only reasonable inference that can be drawn from this record is that the trial court overruled the plea because this matter had already been ruled by the New Madrid County circuit court.

The appellant contends that the trial court erred in permitting the prosecuting attorney in cross-examination of the appellant, his wife and his son Gene to read to the jury, for the express purpose of impeaching them or each of them, excerpts from the transcript of the proceeding at the coroner's inquest because that was in contradiction of his constitutional and statutory rights.

The appellant was placed upon the stand and on cross-examination was asked if he had not made certain answers to certain questions asked him at the coroner's inquest which were contradictory to his testimony [348] given at this trial. The questions asked him at the coroner's inquest were read to him and also his answers. Portions of his testimony given at the coroner's inquest were read into the record for the purpose of impeaching him. This was objected to because it violated his constitutional rights. The objection was overruled.

Section 19 of article I of the 1945 constitution provides: "That no person shall be compelled to testify against himself in a criminal cause . . ." The immunity afforded a witness by the "Constitutional provisions is broad enough to protect him against self-incrimination before any tribunal in any proceeding; it is not merely to shield a witness at his final trial but extends its protection in preliminary proceedings." In re West, 348 Mo. 30, 152 S. W. 2d 69, l. c. 70.

In the case of State v. McDaniel, 336 Mo. 656, 80 S. W. 2d 185, we ruled the testimony given by the accused at a coroner's inquest, if given voluntarily, could be used against him at his trial for the reason that he could waive his constitutional right to immunity. We also ruled that where a defendant was subpoenaed as a witness and ap-

peared at a coroner's inquest and testified, that fact alone did not make his testimony inadmissible. The test as to the admissibility of this character of testimony is no longer whether it was made in a judicial proceeding under oath but: Was it voluntary? If so, then it is admissible, otherwise not. Whether such testimony was voluntarily given must be determined on the particular facts of each case: "Whether the defendant was ignorant; whether he had counsel; whether he was advised of his rights; whether coercive methods were employed in obtaining the statement from him, etc." Loc. cit. 195. In that case the coroner advised him of his rights and he understood this advice. We held that under those circumstances the defendant's testimony given at the coroner's inquest was admissible at the trial.

In this case the appellant was arrested by the sheriff at the restaurant and taken by him to the coroner's inquest. In the presence of his wife and son Gene he asked the sheriff if he had to testify and was told they would all have to testify. The appellant had no attorney. He testified that he could sign his name but he could not read or write.. Both the sheriff and the acting coroner testified that they did not advise the appellant about his constitutional rights. In fact, he was not allowed to be present when the other witnesses testified but was kept in an automobile. No witness was allowed to hear the testimony of the other witnesses. Strangely, the name of the appellant, his wife and his son Gene were indorsed on the information as witnesses for the state.

In the case of State v. Pearson, 270 S. W. 347, we held that the defendant's testimony before the coroner's inquest was involuntary. The facts in that case were very similar to the facts in this case. In ruling that case we said:

"We are of the opinion in this case that, on the facts aforesaid, the defendant did not know that the testimony which he was giving before the coroner might be used against him as an admission at the trial, nor does it appear that he was so advised by any one. The state, through its coroner, was conducting the holding of this inquest. It was presided over by a justice of the peace, who presumably must have known that defendant, then in charge of the officer as a prisoner and under suspicion, should have been informed as to his legal rights in case he testified under such circumstances. We are of the opinion that defendant did not voluntarily appear as a witness before the coroner with knowledge as to his constitutional rights, and that the foregoing testimony should have been excluded." Loc. cit. 351.

See also State v. Young, 119 Mo 495, 24 S. W. 1038; State v. Bartley, supra; and State v. Conway, 348 Mo. 580, 154 S. W. 2d 128.

Under the facts outlined above, we are of the opinion that this appellant did not voluntarily testify at the coroner's inquest and that

the court erred in admitting this testimony on cross-examination of the appellant.

Appellant also contends that the introduction of portions of his wife's testimony [349] given at the coroner's inquest should have been excluded. On cross-examination of appellant's wife she was asked if certain questions were asked her at the coroner's inquest and if she did not make certain answers that were contradictory to her testimony at the trial. Then extracts of her testimony at the coroner's inquest were introduced in evidence to impeach her.

Section 4081, R. S. Mo., 1939, provides that no person on trial or examination, nor wife or husband of such person, shall be required to testify. The testimony of appellant's wife at the coroner's inquest was given under the same circumstances as that of the appellant. We think that her testimony given before the coroner's inquest should have been excluded for the same reason that we held appellant's testimony inadmissible. Even if appellant had been sufficiently informed of his rights to object to her testimony, still her testimony should have been excluded because he had no opportunity to object to it as he was excluded from the room when she testified.

However, neither the constitutional provision nor the statute applies to appellant's son Gene. The son is a competent witness against his father. The evidence Gene gave at the coroner's inquest could be used to impeach him as a witness for the appellant. State v. Gatlin, 170 Mo. 354, 70 S. W. 885.

Appellant contends that the trial court erred in refusing several instructions offered by him. We have examined these instructions and find that instructions covering the same principles of law were given by the court. It was, therefore, not error to refuse these requested instructions.

Appellant contends that the court should have had a panel of thirty jurors so that he would have had twelve challenges. Before this trial started the state dismissed the charge of murder in the first degree. Under section 4063, R. S. Mo., 1939, the appellant is entitled to only eight challenges when charged with murder in the second degree.

Appellant also complains of certain procedural errors, such as disqualification of certain prospective jurors, misconduct of certain jurors, his application for continuance, time to prepare instructions, and the closing argument of the prosecuting attorney. Such alleged errors will not, in all probability, arise at the next trial so we will not discuss them.

For the error in reference to the admission of parts of the transcript of the evidence given at the coroner's inquest, the judgment of the trial court should be reversed and the cause remanded for a new trial. It is so ordered. All concur.