**STATE of Missouri, Respondent,**

v.

**James E. THOMPSON, Appellant.**

No. 44394.

Supreme Court of Missouri.

Division No. 2.

July 11, 1955.

Samuel Raban, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Donal D. Guffey, Asst. Atty. Gen., for respondent.

STOCKARD, Commissioner.

James E. Thompson was charged with robbery in the first degree by means of a dangerous and deadly weapon pursuant to Section 560.135 RSMo 1949, V.A.M.S. He was also charged with three separate convictions of a felony in compliance with what is known as the Habitual Criminal Act, Section 556.280 RSMo 1949, V.A.M.S. The jury was instructed on the previous convictions but made no findings thereon, and found the appellant guilty of the offense charged and fixed his punishment at imprisonment in the penitentiary for twenty years. From the ensuing judgment and sentence the defendant has appealed.

The defendant has filed a complete transcript but no brief. It is therefore our duty to examine the transcript for errors, if any, assigned in his motion for new trial, and we must review those matters previously considered parts of the record proper in order to ascertain errors that may appear therein.

The state's evidence showed that at 10:55 o'clock on the night of August 1, 1953, the defendant and a companion named Richard Lindner entered the Gasen Drug Store located at 2867 North Union, St. Louis, Missouri, each carrying revolvers, and at gun point took $55 from the cash register and approximately $238 from a shelf, all in bills and the property of the Gasen Drug Company. They also took from a safe approximately $100 in silver, the property of Mr. Jacob Gasen, the manager of the store. A newsboy who sold newspapers in front of the store saw defendant and Lindner leave the store and drive away in a black 1949 Ford automobile with a woman companion who was waiting in the car.

Between 3:00 and 3:15 o'clock in the morning of August 2, 1953, Police Officer Conley saw two men in the rear of a Tom Boy Grocery Store at 3333 Clara Avenue in St. Louis. He rapped on a window with his pistol and told them to come out. The two men, defendant and Lindner, came out and were arrested. Police Officers Haney and Kranz then entered the store and found a door under the meat counter ajar, and upon opening this door they found two revolvers which were identified at the trial as being the same or similar to the revolvers carried by defendant and Lindner when they were in the Gasen Drug Store. Norma Thompson, the wife of the defendant, was found in a black 1949 Ford car about one hundred feet from the Tom Boy Store.

The defendant and his wife both testified. Their testimony was to the effect that on the evening of August 1, 1953, from about seven-thirty or eight o'clock until about eleven fifty-five o'clock they were in a bar near their home with a couple known to them only as Marie and Al, and that all four of them then went to the defend-

ant's home where they stayed until about five or ten minutes after two in the morning when Lindner came to their house. The five of them went to a barbecue place on Sarah and Evans Streets, and then were going to pick up a girl friend of Lindner's known only as Cora who lived somewhere on Clara Street. They never got to Cora's place, but when they were on Clara Street the car was stopped and Marie and Al left the car and have not been seen since. The defendant and Lindner were arrested in front of the Tom Boy Store. When arrested the defendant had $212.30 on his person, mostly in bills, but he stated this was a payment made to him in his business as a general contractor. He denied that he had been in the Gasen Drug Store on the night of August 1, 1953, and he also denied that he had participated in the robbery of the store.

Defendant made 18 assignments of error, one of which was that the trial court erred in restricting his right to cross-examine certain witnesses for the state concerning prior inconsistent statements. While this assignment is not set forth with the detail and particularity that might be desired, it is sufficient to point out the particular matters about which complaint is made.

The identity of the defendant as being one of the two men who committed the robbery was the principal issue in the trial. The only defense was that of an alibi. On direct examination, Mr. Gasen testified that on the morning following the robbery he identified the defendant as one of the two robbers, and he also testified that Lindner first entered the drug store and that the defendant was the second to enter. On cross-examination, after establishing that Mr. Gasen testified at the preliminary hearing, he was asked if he did not there testify that he could not see who the second robber was. The objection that the question assumed something that was not in evidence was sustained. Mr. Gasen was later asked on cross-examination if he previously testified at the preliminary hearing "that you could not identify the second man; that you didn't get a chance to see who it was?" He answered, "No," and he was then asked if he recalled what he did say at the preliminary hearing on the question of identification of the defendant. Counsel for the state then said: "Just a moment, Mr. Gasen. I'll have to object to what he said downstairs (the preliminary hearing) as being immaterial here." Defense counsel advised the court that he wanted to show a contradiction in the statements, but the court sustained the objection, and it was apparent that the objection was made and sustained to the entire line of questioning. Harold Ray, a witness for the state, testified that he saw two men come out of the drug store at the time of the robbery and get in a black 1949 Ford automobile and drive away, and that he recognized the defendant as the taller of these two men. On cross-examination after establishing that this witness testified at the preliminary hearing, he was asked if he recalled testifying there that he could not identify the tall man. An objection that the question assumed something not in evidence was sustained. He was then asked if he recalled what he said at the preliminary hearing about identifying the tall man, and an objection that it was immaterial was sustained. After a conference without the hearing of the jury, defense counsel was then permitted to ask the witness what he said at the preliminary hearing that he remembered.

In connection with these rulings the court called counsel to the bench, and it appears that the rulings were based on the theory that if defendant wanted to show prior inconsistent statements concerning the identification of defendant he would have to use some other undisclosed method. It it also clear that the court would not permit further cross-examination on the subject.

Cross-examination of a witness within the permitted limitations is a matter of right, and one of its permissible purposes is to bring out facts that may tend to show that the testimony of the witness on direct examination is untrue or is not entitled to belief. Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624. One method of doing this is to show on

cross-examination that the witness has made prior inconsistent statements concerning a material matter. 3 Wharton, Criminal Evidence, § 1309; State v. Welch, 311 Mo. 476, 278 S.W. 755; State v. Ancell, 333 Mo. 26, 62 S.W.2d 443. This includes prior inconsistent statements made at a previous hearing or proceeding, such as a coroner's inquest or a preliminary hearing. State v. Burnett, 357 Mo. 106, 206 S.W.2d 345; State v. Myers, 354 Mo. 277, 189 S.W.2d 279. "There is * * * no objection, either of principle or of policy, to such an attempt to prove the self-contradiction by the witness himself. * * * Moreover, it is not uncommon to obtain, by cross-examination alone, an adequate exposure of the witness' inconsistencies; and no artificial limits should be set for its employment." 3 Wigmore, Evidence (3rd. ed.) § 1023. But in order to show by other witnesses prior inconsistent statements on a material matter for the purpose of impeachment, a foundation must first be laid by interrogating the witness concerning the alleged inconsistent statements. State v. Clough, 327 Mo. 700, 38 S.W.2d 36; State v. Stallings, 326 Mo. 1037, 33 S.W.2d 914; State v. Mathis, 323 Mo. 37, 18 S.W.2d 8. In this case the defendant apparently sought to question these two witnesses concerning statements previously made by them for the purpose of impeachment or sought to lay the proper foundation necessary to show prior inconsistent statements, a procedure he was entitled to follow. The identification of the defendant as the person who committed the offense charged was the most important issue in the case, and what these witnesses testified to at the preliminary hearing on this question was material. "It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them." Alford v. United States, supra [282 U.S. 687, 51 S.Ct. 219]. See also, Cossack v. United States, 9 Cir., 63 F.2d 511, 515, where the defendant stated that he desired to ask a witness for the prosecution " 'whether she had a conversation' " with a named person. It was there held that, "It is perfectly apparent from the record that the appellant was attempting to lay the foundation for the impeachment of the witness * * *, but that he was improperly not permitted to do so." For this reason the case was reversed.

We believe that the defendant was entitled to a reasonable cross-examination of the state's witnesses for the purpose of impeachment by showing prior inconsistent statements, or to lay the proper foundation for impeachment on this ground by use of other witnesses. Of course, the trial court may properly exercise its discretion as to the scope and extent of the cross-examination, but to prevent any cross-examination on the subject is not within its discretion. For this improper restriction of the right of cross-examination this case must be reversed and remanded for a new trial.

Six of the assignments in the motion for a new trial pertain to alleged error in permitting witnesses for the state to testify concerning a crime in which defendant apparently was engaged at the time of his arrest.

In order for one to determine from the record that defendant was engaged in a crime at the time of his arrest it is necessary to read between the lines. No one so testified, and the reason why defendant was in the Tom Boy Grocery Store at 3:15 o'clock in the morning, and the reason why several police officers suddenly converged on this particular store is left solely to conjecture. There was no proof that the store was broken into or that the defendant was committing any unlawful act except what may be inferred from the circumstances of his arrest. There was no proof of the *details* of any crime.

Assuming that the evidence concerning the arrest of defendant did tend to show the commission of a crime sep-

arate and distinct from the one for which the defendant was being tried, the evidence was properly admitted. " 'Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish * * * the identity of the person charged with the commission of the crime on trial.' " State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 305. However, it is only where the identity of the accused is not definitely connected with the offense on trial that other offenses may be introduced to connect and identify him with the case on trial, State v. Reese, supra, and it is necessary that there be such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. 20 Am.Jur., Evidence, § 312. As previously stated, the identity of the defendant as one of those who committed the robbery was the principal issue. It cannot be said, absent the evidence now under consideration, that the identity of the defendant was definitely established. At most there was substantial evidence to that effect. The proof that four hours after the robbery defendant and Lindner were found together and the two revolvers were found under the circumstances here related, and that nearby there was a black 1949 Ford automobile in which defendant's wife was sitting, constituted circumstantial evidence logically corroborating the other evidence of the identity of the defendant as the one who committed the offense charged. The evidence was properly admitted for the purpose of establishing the identity of the defendant. 20 Am.Jur., Evidence, § 312; 22 C.J.S., Criminal Law, § 684; State v. Spinks, 344 Mo. 105, 125 S.W.2d 60; State v. Hepperman, 349 Mo. 681, 162 S.W.2d 878; State v. Saussele, Mo.Sup., 265 S.W.2d 290.

█ In his motion for a new trial defendant also asserts error by the trial court in refusing a continuance because of an absent witness, for refusing to issue subpoenas for two witnesses when the request therefor was made during the second day of the trial and for refusing to permit his court appointed counsel to withdraw on the day the case was set for trial. These matters are of such nature as to render it unlikely that they will or might recur upon another trial so need not now be considered. Defendant also set forth other assignments of error which did not preserve anything for review because they did not comply with the requirements of Supreme Court Rule 27.20, 42 V.A.M.S., that the motion for new trial "must set forth in detail and with particularity" the specific grounds or causes therefor, and, of course, these assignments are not considered.

For the error hereinabove mentioned, the judgment is reversed and the cause remanded.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.